UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH WENFEEL, a/k/a[1] ) | | |
| KENNETH WINFIELD, ) | | |
| ) | | |
| Petitioner, ) | | |
| ) | | |
| v. ) | No. 4:15 CV 959 CAS (JMB) | |
| ) | | |
| IAN WALLACE, ) | | |
| ) | | |
| Respondent. ) | | |

## REPORT AND RECOMMENDATION

Kenneth Wenfeel ("Wenfeel") has applied to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1) The Honorable Charles A. Shaw, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for a Report and Recommendation on all dispositive matters, and for rulings upon all non-dispositive matters. See 28 U.S.C. § 636(b). The undersigned concludes that this matter can be resolved on the existing record, without the need for an evidentiary hearing. The undersigned recommends that Wenfeel's habeas corpus petition be denied, and that no certificate of appealability issue.

I.  **Procedural and Factual Background**

   A.  **Introduction**

Wenfeel is currently serving six concurrent twenty-year sentences at the Southeast Correctional Center, in Charleston, Missouri, having been convicted after a jury trial in the Circuit Court of St. Louis City, of three counts of robbery in the first degree, and three counts of armed criminal action. The convictions and resulting sentences arise out of two incidents in July

---

[1] Missouri Department of Corrections records show that Petitioner's name is Kenneth Winfield, but all state court documents and Petitioner's filings in this Court refer to Petitioner as Kenneth Wenfeel. The undersigned will refer to Petitioner as Kenneth Wenfeel.

of 2009 in which Wenfeel and two accomplices robbed three different people at two separate businesses, within the City of St. Louis.

### B. Factual Background

The evidence adduced at trial shows that on July 1, 2009, Saurav Upadhyay[2] ("Upadhyay") was working alone at a Cricket Wireless cell phone store on Riverview Circle, in the City of St. Louis. (Resp. Ex. A at 153) Shortly before noon, an individual later identified as Marcus Wharton ("Wharton") came into the store. (Id. at 154, 184-85) Wharton began to browse around the store. When asked whether he needed help, Wharton indicated that he was just looking, but that his cousin would be coming in shortly to purchase a phone. (Id. at 155-56)

Wenfeel entered the store shortly thereafter. (Id. at 156-57) While Upadhyay was picking up an accessory to show Wharton, Wharton pulled out a gun and pointed it at Upadhyay. (Id. at 157-59) Wharton then grabbed Upadhyay by the collar and began bringing him toward the register, which Wenfeel was already attempting, unsuccessfully, to open. (Id. at 159-60) Wharton ordered Upadhyay to open the cash register, while threatening that he would shoot him if he tried to "act smart." (Id. at 160) Due to his nervousness, however, Upadhyay had difficulties opening the register, causing Wenfeel to urge Wharton to shoot him. (Id. at 160-61)

Eventually, Upadhyay succeeded in opening the cash register. Wharton and Wenfeel took approximately $1,000 from the register, and walked around the store to see if there was anything else to take. (Id. at 162-64) Finding nothing more, Wharton had Upadhyay empty his pockets and took $20 from his wallet. The robbers then walked out the front door. (Id. at 164)

---

[2] The attorney general spells this name Uphadyay. See, e.g., ECF No. 12 at 10. The state court records, however, including the trial transcript and the charging documents, spell the name Upadhyay. The undersigned will use the latter spelling, because that is what the majority of the state court documents use.

A little over two weeks later, on July 16, 2009, Walter Bryant ("Bryant") and Timothy Williams ("Williams")[3] were working at Game Stop, a videogame store, at the corner of Kingshighway and Chippewa, in the City of St. Louis. (Resp. Ex. B at 238-39, 283-84) In the early afternoon hours, a man later identified as Wharton came into the store and began to browse. (Id. at 239-40) After several minutes, a second man, later identified as Wenfeel, also came into the store. (Id.) As the two men were browsing, Bryant and Williams were working behind the counter, storing new inventory that the store had received earlier that day. (Id.) As Bryant was putting away this inventory, he noticed, out of the corner of his eye, that Wharton had come up and put a gun to the back of his head. (Id.)

Wharton then ordered Bryant to open the store's safe or he would shoot him. (Id. at 241) While Wharton held a gun to the back of Bryant's head, Wenfeel took a gun out of his book bag, pointed it at Williams, and ordered Williams to accompany him to the back of the store. (Id. at 241-42, 288-89) Bryant was unable to open the safe (due to a time-delay mechanism) but he was able to open the cash registers, and he put the cash into Wenfeel's book bag. (Id. at 242-43)

After Wenfeel took Williams to the back of the store, Wenfeel ordered Williams to grab multiple game systems for Wenfeel to take. (Id. at 289-90) At this point, Wharton brought Bryant to the back of the store. Upon reaching the back room, Wharton had Bryant unlock the back door. (Id. at 244, 290) While Bryant was unlocking the back door, Wharton's gun fired, apparently accidentally. No one was hit. (Id. at 244, 290-91) After Bryant unlocked the back door, both Wharton and Wenfeel ran out of the back door, having taken money from the register and one or more game systems. (Id. at 245-46)

---

[3] Timothy Williams indicated that his full name is Timothy Williams-Bonnett, but went by "Mr. Williams" at trial. (Resp. Ex. B at 283) The undersigned will refer to Mr. Williams-Bonnett as "Williams."

After Wharton and Wenfeel left, Bryant and Williams called the police. (Id. at 245) The police obtained a copy of the store's surveillance video, and recovered the shell casing from Wharton's gun. (Id. at 246-47, 331-33)

These robberies remained unsolved until late July, when a police officer attempted to stop a car for speeding on Bellfontaine Road. (Resp. Ex. B at 351-53) Instead of pulling over, the car sped onto Interstate 270, heading westbound. The car shifted into the leftmost lane and came to a sudden stop. Two men got out of the car, jumped over the median onto the eastbound half of the highway, into oncoming traffic, and fled on foot. (Id. at 353-54) A search of the area for the two men led to officers finding and detaining Harriston Beck ("Beck"). (Id. at 355) In processing that car, an investigator found two guns, and a firearms analyst later determined that one of the two guns found in the car matched the shell casing found at the video game store on July 16. (Id. at 356-62) Also inside the car, investigators found the fingerprints of Wharton and Beck. (Id. at 345-47) Investigators thus initially concentrated on Wharton and Beck as the two suspects in the Cricket Wireless and Game Stop robberies. (Resp. Ex. A at 204-05)

As part of their investigation, officers asked all three victims from the two robberies to look at photographic lineups containing Wharton and Beck. Bryant identified Wharton as the first man to come into the videogame store, and the man who stayed with Bryant during the robbery. (Resp. Ex. A at 254-56, 315-16) Officers also showed Bryant a photographic array containing a picture of Beck, but Bryant did not identify anybody from that array. (Id. at 256, 315-16) Officers also showed these arrays to Williams. Williams recognized Wharton as the person who was with Bryant, but did not recognize anybody from the array containing Beck. (Resp. Ex. A at 295-96, 315-16) Similarly, on August 5, Upadhyay identified Wharton as the

-4-

person who held the gun during the robbery of the Cricket store, but did not recognize anybody from the array with Beck. (Resp. Ex. A at 167-71, 185, 206-09)

This information led investigators to attempt to arrest Wharton in connection with the two robberies. On August 6, 2009, plain clothes officers maintained a perimeter around Wharton's house as they prepared to enter the house and arrest Wharton. In maintaining their perimeter, the officers came into contact with, and arrested, Wenfeel, as he was leaving Wharton's house. Officers attempted to arrest Wharton in his house, but he was not there. Instead, officers found Wharton in an abandoned house next door, hiding in an upstairs closet. (Resp. Ex. B at 212-15, 364-66)

Based upon Wenfeel's presence at Wharton's house and the fact that he matched the descriptions given by the victims, Wenfeel became a person of interest to the officers. At that time, officers decided to show the three victims a photo array that included Wenfeel. All three victims immediately picked Wenfeel out of the photo array. (Resp. Ex. A at 171-72, 185, 209-11, 256-58, 297-98) Next, all three victims picked Wenfeel out of a physical lineup as the second robber. (Resp. Ex. A at 173-74, 210-11, 258-61, 298-300, 316-18) Finally, at trial, all three victims identified Wenfeel as the second man involved in the robberies. (Resp. Ex. A at 157, Resp. Ex. B at 261-62, and Resp. Ex. B at 285-86)

C. **Procedural History and Issues Before the Court**

On September 8, 2009, Wenfeel was indicted, along with his co-defendants Wharton and Beck, on three counts of robbery and three counts of armed criminal action.[4] (Resp. Ex. D at 16-24) After multiple delays and continuances (requested by both sides), Wenfeel's trial finally

---

[4] Beck was separately involved with Marcus Wharton in a robbery on July 11, 2009. This incident appears not to have involved Wenfeel. (Resp. Ex. D at 16-19, 20-24) Beck was also present at the Game Stop prior to Wharton and Wenfeel robbing it. (Resp. Ex. B at 328-29)

began in January of 2012.[5] (Id. at 12-13) The jury found Wenfeel guilty of all six counts. (Id. at 13) On March 2, 2012, Wenfeel was sentenced to twenty years imprisonment for each of his six counts of convictions, with all sentences to run concurrently. (Id. at 40-43)

On direct appeal, Wenfeel challenged the sufficiency of the evidence supporting his conviction. He argued that, where his conviction was based solely upon eyewitness testimony, and where that identification evidence was allegedly unreliable, there was insufficient evidence for the jury to convict. (Resp. Ex. E at 13-14) The Missouri Court of Appeals rejected this challenge. (Resp. Ex. G at 3-4) That court held that the consistent testimony of three different witnesses, all of whom identified Wenfeel as the robber, was sufficient evidence to convict Wenfeel. (Id. at 4)

Wenfeel then filed a *pro se* motion under Missouri Supreme Court Rule 29.15 to amend or vacate his twenty year sentences. (Resp. Ex. H at 1) In his *pro se* motion, Wenfeel made several allegations of ineffective assistance of trial counsel. In particular, he argued that his trial counsel was ineffective for: (1) not adequately impeaching the eyewitnesses to the robbery; (2) not requesting an instruction on inconsistent verdicts because the weapons elements of robbery in the first degree and armed criminal action were not the same; (3) not calling Beck and Wharton to testify that they were the two robbers and that Wenfeel did not participate in any of the robberies; (4) failing to object to violations of the rule of Brady v. Maryland, 373 U.S. 83 (1963); and (5) not challenging the constitutionality of Section 558.019 of the Missouri State statutes, which requires Wenfeel to serve at least 85 percent of his sentence. (Resp. Ex. I at 1, 5, 7-14)

---

[5] Marcus Wharton and Harriston Beck pled guilty to the charges. (Resp. Ex. R at 28, 31)

In his *pro se* motion, Wenfeel also argued that his appellate counsel was constitutionally ineffective for not briefing claims that: (1) the trial court erred in denying Wenfeel's request for a mistrial based on a discovery violation; and (2) the trial court erred in not giving an instruction on inconsistent verdicts. (Resp. Ex. I at 2-3, 6) Finally, Wenfeel argued that his convictions for robbery in the first degree and armed criminal action violated the Double Jeopardy Clause. (Id. at 4)

Wenfeel was appointed post-conviction relief ("PCR") counsel. (Resp. Ex. J at 1) Wenfeel's counsel did not file an amended 29.15 motion. Instead, PCR counsel filed a statement, pursuant to Rule 29.15(e), in lieu of an amended motion, in which PCR counsel averred that he investigated Wenfeel's case, and could find no more meritorious claims, or facts to support the claims in Wenfeel's *pro se* 29.15 motion. (Resp. Ex. L at 1-2)

On November 3, 2014, the 29.15 court denied the claims raised in Wenfeel's *pro se* motion. (Resp. Ex. M at 11) After the denial of his 29.15 motion, Wenfeel did not appeal to the Missouri Court of Appeals. Instead, Wenfeel filed this habeas corpus petition. (ECF No. 1)

After receiving Wenfeel's petition, the Court ordered Respondent to show cause why the relief requested by Wenfeel should not be granted. (ECF No. 9) Respondent filed a response. (ECF No. 12) Wenfeel has filed a traverse to the response. (ECF No. 19)

Although his original petition included eight separate grounds for relief, Wenfeel voluntarily dismissed grounds two through eight.[6] Accordingly, only ground one remains for

---

[6] As detailed in earlier orders of this Court, Wenfeel's original habeas petition included eight grounds for relief. (See ECF No. 1) However, Wenfeel filed a motion to withdraw grounds two through eight, which the undersigned granted. (ECF Nos. 18, 21) The background and context to this withdrawal can be found in this Court's orders dated October 15, 2015 (ECF No. 13), December 30, 2015 (ECF No. 17), and February 3, 2016. (ECF No. 20)

(*continued*)

decision. In ground one, Wenfeel argues that insufficient evidence supported his conviction, and that the state courts violated his federal due process rights by not vindicating that claim. (ECF No. 1 at 5) The matter is now fully briefed and may be resolved on the existing record.

## II. Legal Framework and Standard of Review

Review of Wenfeel's ground is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA mandates a review of Wenfeel's ground that is both "limited and deferential" to the decisions of the state courts. Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under the AEDPA, a federal court may not issue a writ of habeas corpus to a state prisoner unless the state court's adjudication of a constitutional claim "was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of the facts in light of the evidence presented in state court." Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d)). Thus, a state court decision "may be incorrect, yet still not unreasonable…." Id. A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts.'" Bucklew v. Leubbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). A state court decision is "an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing

---

Wenfeel also filed a motion to stay his federal habeas action so that he could return to state court and attempt to exhaust his remedies associated with grounds two through eight. (ECF No. 10) This Court denied Wenfeel's motion to stay. (ECF No. 17)

legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" Id. "Further, 'a determination of a factual issue made by a State court [is] presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)). A state court decision involves an unreasonable determination of the facts only if the presumptively correct factual findings do not enjoy support in the record. See Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004).

## III. Discussion

As noted above, Wenfeel has abandoned all but the first ground for relief in his federal habeas petition. Wenfeel argues that there was insufficient evidence to support his conviction, and that the trial court violated his due process rights when it failed to so rule. (ECF No. 1 at 6)

Wenfeel's argument in support of this contention involves two steps. First, Wenfeel claims that his convictions for the robberies of the Cricket Wireless store and the Game Stop store were based "purely on eyewitness testimony." Second, Wenfeel attacks the quality of those eyewitness identifications. Wenfeel does this by arguing that the Cricket Wireless employee told the 911 dispatcher he could not describe the second robber, and the Game Stop employees provided descriptions of the height of the second robber which did not match Wenfeel's actual height. Wenfeel concludes by arguing that "where the State had no other evidence tying Petitioner to either robbery," and the identifications were this poor, there is not sufficient evidence to support his conviction. (ECF No. 1 at 6-6A)

Respondent argues that the ruling of the Missouri Court of Appeals on direct appeal— that there was sufficient evidence to support the conviction—is a correct and reasonable application of federal due process law. (ECF No. 12 at 20) Respondent points out that this Court must accept that the jury credited the eyewitness testimony. Once that evidence is

credited, Respondent argues, there is sufficient evidence to support the conviction because there was at least one eyewitness to each crime charged, and one eyewitness to a crime is sufficient to convict under federal and state law. Respondent emphasizes that three different robbery victims each independently and repeatedly identified Wenfeel as a participant in the robberies. (ECF No. 12 at 19-21) Indeed, as discussed in the factual background above, Upadhyay, Bryant, and Williams all identified Wenfeel as a participant in the robberies in: (1) a photographic array; (2) a physical lineup; and (3) at trial.

The undersigned agrees with Respondent. The undersigned finds that the Missouri Court of Appeals adjudicated the sufficiency of the evidence ground under Jackson v. Virginia, 443 U.S. 307 (1978) (describing standard for challenges to the sufficiency of the evidence in the federal habeas context) on the merits, and that that decision was not contrary to, nor an unreasonable application of Jackson under the AEDPA. Also, the undersigned finds that the Missouri Court of Appeals reasonably determined the facts in this matter. Therefore, Wenfeel is not entitled to relief on this ground. 28 U.S.C. § 2254(d).

Before considering the Missouri Court of Appeals' analysis, however, as an initial matter, the undersigned believes that Wenfeel is conflating two independent constitutional claims in his argument as it is articulated above. In other words, the undersigned believes that Wenfeel is not making a traditional Jackson claim. Instead, Wenfeel is conflating a Jackson claim with a distinct claim that the eyewitness identification evidence in this case was unreliable, and should have been excluded under the Due Process Clause pursuant to Manson v. Brathwaite, 432 U.S. 98 (1978). The undersigned will address this conflation of the issues in more detail below, but first, will assume that Wenfeel presented a proper claim concerning the sufficiency of the evidence under Jackson.

Under Jackson, "a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" McDaniel v. Brown, 558 U.S. 120, 121 (2009) (per curiam) (quoting Jackson, 443 U.S. at 324). In a Jackson analysis, the federal court must assume that the trier of fact resolved all conflicting evidence in favor of the prosecution and defer to that resolution. Brown, 558 U.S. at 133. The Jackson standard looks to whether there is sufficient evidence which, *if credited*, could support the conviction. Schlup v. Delo, 513 U.S. 298, 330 (1995). The purpose of a Jackson analysis, therefore, "is to determine whether the jury acted in a rational manner in returning a guilty verdict based on the evidence before it, not whether improper evidence violated due process." Brown, 558 U.S. at 130.

In ruling upon this ground, the Missouri Court of Appeals ruled on the merits. Therefore, that decision is entitled to deference under the AEDPA. See Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004). Because the decision of the state court was not contrary to, nor an unreasonable application of, federal law, Wenfeel is not entitled to relief. See 28 U.S.C. § 2254(d)(1).

First, the Missouri Court of Appeals cited the correct governing law—the Jackson standard. See Resp. Ex. G at 3 ("When the sufficiency of the evidence is challenged in a criminal case, our review is limited to whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.").

Second, the Missouri Court of Appeals reasonably applied this law to the facts of Wenfeel's case. In applying the Jackson standard to the facts of this case, the Missouri Court of Appeals reasoned that there were eyewitnesses to each of the three robberies of which Wenfeel was convicted, that a reviewing court must assume that the jury credited these eyewitnesses, and

-11-

that a single eyewitness is sufficient to sustain a conviction. This is in accordance with federal and Missouri law. See United States v. Tillman, 765 F.3d 831, 834 (8th Cir. 2014) (holding that the uncorroborated testimony of a single witness may be sufficient to sustain a conviction); see also Neil v. Biggers, 409 U.S. 188, 200-01 (1972) (permitting a rape conviction to stand where the only evidence supporting the conviction was a single eyewitness—the victim); see also Story v. State, 646 S.W.2d 68, 72 (Mo. banc. 1983) (holding that testimony of a single eyewitness is sufficient evidence to sustain a conviction).

That standard is met here. Upadhyay testified regarding the Cricket Wireless robbery, thus providing sufficient evidence to support the robbery and armed criminal action charges from that robbery. Additionally, Bryant and Williams testified concerning the Game Stop robbery, and their testimony was similarly sufficient to sustain the charges associated with that robbery.[7] The Missouri Court of Appeals combined these two principles—that the court must credit the eyewitness testimony under Jackson, and the fact that a single eyewitness is sufficient evidence to sustain a conviction. Again, this is a correct and reasonable application of federal law under the AEDPA and Wenfeel is not entitled to relief on this ground. See 28 U.S.C. § 2254(d)(1).[8]

---

[7] The undersigned notes that Wenfeel does not argue that there was insufficient evidence to prove the elements of robbery in the first degree and armed criminal action. Rather, Wenfeel only disputes whether there was sufficient evidence to prove that *he* was one of the robbers. See State v. Weaver, 481 S.W.3d 927, 931 (Mo. App. 2016) (discussing the elements of first degree robbery and armed criminal action, and distinguishing between a sufficiency of the evidence challenge directed at the elements of robbery as opposed to sufficiency of identification evidence). In this case, the Missouri Court of Appeals considered the sufficiency of the *identification* evidence, as opposed to the evidence supporting the elements of robbery in the first degree or armed criminal action—Wenfeel has not contested the latter. (Resp. Ex. G at 3-4)

[8] Wenfeel also argues that under McDaniel v. Brown, 558 U.S. 120, 121 (2009) (per curiam), "the Jackson standard requires that, when faced with conflicting evidence, there must be presented other convincing evidence of guilt." (ECF No. 19 at 2) Wenfeel then argues that, because there was inconsistent and conflicting identification evidence, the State was required to offer other "convincing evidence" to show that sufficient evidence supports the conviction.

(*continued*)

-12-

Finally, as noted above, the undersigned believes that—even though Wenfeel claims to be making "a typical Jackson claim," regarding the sufficiency of the evidence—he weaves in separate, due process arguments relating to the reliability of eyewitness identifications. (See ECF No. 19 at 3-4) ("Petitioner argues that the victims testimonies [sic] relating to the identification evidence was inconsistent, conflicting, inaccurate and unreliable, and also that the S[t]ate had no other evidence tying Petitioner to either of the six offenses charged [sic].")

A Jackson claim, however, is not concerned with the quality of the eyewitness identification, and the undersigned cannot engage in that analysis. See Brown, 558 U.S. at 131 ("[T]he purpose of a Jackson analysis is to determine whether the jury acted in a rational manner in returning a guilty verdict based on the evidence before it, *not whether improper evidence violated due process*.") (emphasis added). This argument that the identifications should have been excluded is a Due Process inquiry under the standards articulated in Brathwaite.

Here, Wenfeel claims that all the identifications in this case should have been excluded. According to Wenfeel, Bryant's and Williams' identifications should have been excluded because they "change[d] over time" and "failed to match Petitioner in material part." (ECF No. 19 at 10) Wenfeel argues that Upadhyay's identification "was not enough to connect Petitioner" to the Cricket Wireless robbery because Upadhyay "did not get a good look at either man because he kept his head down and his attention diverted away from their faces," and because the "entire incident lasted only three to five minutes," and Upadhyay's initial description of Wenfeel as 5'9" to 6'0" was "potentially three inches" off, because Wenfeel is 6'0". (Id. at 11)

---

Wenfeel is misstating federal law. Under Brown, where there is conflicting evidence, the federal court must assume that the jury resolved that conflicting evidence in favor of the state. Brown, 558 U.S. at 133. Once the Court has resolved that conflicting evidence in favor of the state, then the federal court looks to whether there is sufficient evidence to support the conviction.

Regardless of whether these are good arguments or not, these are arguments that go toward the admissibility of the identifications in the first place. That is a Due Process Clause challenge under <u>Brathwaite</u> that the undersigned cannot consider. The undersigned cannot consider such a claim because Wenfeel did not raise it on direct appeal in the state courts, and it is therefore procedurally defaulted here. <u>See</u> <u>Flieger v. Delo</u>, 16 F.3d 878, 885) (8th Cir. 1994) (holding that a habeas petitioner must have raised both the factual and legal bases of his claim to the state court, or it is procedurally defaulted).

The undersigned cannot consider the merits of a procedurally defaulted claim unless Wenfeel can demonstrate cause and prejudice, thereby excusing his procedural default. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). Wenfeel has not even alleged cause or prejudice resulting from his default of this ground, let alone carried his burden in meeting that standard.

Even if Wenfeel had properly brought a <u>Brathwaite</u> claim, however, his allegations here are insufficient because he has not alleged any suggestiveness on the part of police. <u>See</u> <u>Perry v. New Hampshire</u>, 132 S. Ct. 716, 730 (2012) (holding that there is no right to a due process reliability inquiry in the absence of law enforcement suggestiveness). Wenfeel is making a generalized argument about the unreliability of eyewitness identifications and argues that the identifications in this case should have been excluded on general reliability concerns. But <u>Perry</u> rejected the type of inquiry that Wenfeel asks for. There is no freestanding reliability inquiry. That is the province of the jury. <u>Perry</u>, 132 S. Ct. at 720. Therefore, even if the undersigned could entertain Wenfeel's arguments about these identifications, his arguments would fail because he makes no allegations of suggestiveness on the part of law enforcement. <u>Id</u>. at 730.

## IV. Certificate of Appealability

The undersigned has also considered whether to recommend issuance of a certificate of appealability. To grant a certificate of appealability, the Court must find a substantial showing of the denial of a federal constitutional right. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)). Because Wenfeel has not made such a showing in this case, the undersigned recommends that no certificate of appealability issue.

## V. Conclusion

For all of the foregoing reasons, the undersigned recommends that Wenfeel's *pro se* petition for a writ of habeas corpus be denied, and that no certificate of appealability issue.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner Kenneth Wenfeel's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) be denied.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be granted, as Wenfeel has not made a substantial showing of the denial of any federal constitutional right.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of June, 2016